UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| KENTUCKY INDUSTRIAL HEMP, LLC, and ANANDA HEMP INC., | CIVIL ACTION NO. 5:19-496-KKC |
| **Plaintiffs,** | |
| V. | **OPINION AND ORDER** |
| TETERBORO PARTNERS, LLC, CHIEF VENTURES, LLC, and MR. NICE GUY, INC., | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. (DE 15.) Defendants having responded (DE 18) and Plaintiffs having replied (DE 19), the matter is now ripe for the Court's review. For the reasons set forth herein, the Plaintiffs' Motion (DE 15) is GRANTED IN PART and DENIED IN PART.

**I.**

Plaintiffs Kentucky Industrial Hemp, LLC ("Ecofibre Kentucky") and Ananda Hemp, Inc. are hemp product manufacturers. Defendants Teterboro Partners, LLC, Chief Ventures, LLC, and Mr. Nice Guy, Inc. ("MNG") are business entities familiar with potential customers for Plaintiffs' products. On April 9, 2018, two entities identified as "Ecofibre/Ananda Hemp" and "Teterboro/Chief" entered into a Sales Agreement. (DE 18-2.) Defendants seem to contend that the parties to this litigation and the parties to the Sales Agreement are one and the same. (DE 18 at 2.) Plaintiffs, on the other hand, deny that Ananda Hemp, Inc. and Mister Nice Guy, Inc. were parties to the Sales Agreement, as neither existed as a Kentucky entity at the time of the Sales Agreement. (DE 15 at 3.) Nevertheless, Plaintiffs and

1

Defendants agree as to the text of the Sales Agreement (DE 18-2) and its general purpose, which was to govern the payment of commissions by "Ecofibre/Ananda Hemp" to "Teterboro/Chief" for sales made to customers introduced to "Ecofibre/Ananda Hemp" by "Teterboro/Chief." (DE 15 at 3; DE 18 at 4.)

A little over a year after they executed the Sales Agreement, "Teterboro/Chief" and "Ecofibre/Ananda Hemp" signed an Addendum (DE 18-6) to supplement the original Sales Agreement.[1] Plaintiffs again argue that Mister Nice Guy, Inc. was not a party to the Addendum (DE 15 at 4), while Defendants argue that it was. (DE 18 at 4.) Almost six weeks after execution of the Addendum, "Ecofibre/Ananda Hemp" sent "Teterboro/Chief" notice of its intent to terminate the Combined Agreement effective six months later on December 1, 2019. (DE 18-7.)

After disagreements between the parties, Plaintiffs filed an action in Harrison Circuit Court on November 12, 2019, and Defendants removed to federal court. Plaintiffs seek declaratory judgment that the Combined Agreement is invalid and unenforceable, or, in the alternative, that: (1) MNG had no rights under the Combined Agreement; (2) Ecofibre/Ananda did not breach the Combined Agreement; and (3) the Combined Agreement was terminable with reasonable notice and did terminate on December 1, 2019. (DE 1 at 7.) Defendants assert counterclaims for breach of contract, tortious interference with contractual relations, and fraudulent inducement, for which they also seek punitive damages. (DE 5 at 11–16.) Plaintiffs now seek summary judgment as to most of their own claims and as to certain of Defendants' counterclaims.[2] (DE 15 at 2.)

---

[1] The Plaintiffs use the phrase "the Sales Agreement" to describe both the April 2018 Sales Agreement individually and the combination of the 2018 Sales Agreement and the 2019 Addendum. (DE 15 at 3 n.3.) However, the Court will refer to the Sales Agreement and the Addendum together as "the Combined Agreement" to be more precise.
[2] Plaintiffs state in passing that they are seeking summary judgment on all of Defendants' causes of action except tortious interference with contractual relations. (DE 15 at 20.) However, Plaintiffs' Argument section does not appear to seek summary judgment on Teterboro/Chief's counterclaim for breach of contract in the event that the

## II.

### A. Summary Judgment Standard

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational fact finder could not find for the non-moving party based on the record as a whole, there is no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Choice of Law

Although the Sales Agreement contains a choice of law provision favoring Florida law, the parties here agree that Kentucky law should govern. (DE 15 at 6; DE 18 at 8 n.3.) A federal court presiding over a case due to diversity jurisdiction must apply the conflict of law

---

Court does not grant summary judgment declaring the Combined Agreement invalid and unenforceable. Because Plaintiffs do not argue in support of summary judgment on that claim, the Court does not construe their motion as seeking summary judgment on that issue, despite their above-referenced comment.

rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941). The Sixth Circuit has repeatedly noted in the contractual context that "Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) (collecting cases). If there is a dispute in Kentucky and Kentucky has the most significant relationship to the transaction and the parties, Kentucky law will be applied despite an otherwise valid choice-of-law clause. *Id.* at 444. The parties and this Court agree that that is the case here, and Kentucky law should apply.

### III.

Plaintiffs seek summary judgment that: (1) the Combined Agreement is invalid and unenforceable; (2) alternatively, the Combined Agreement was terminable at will and properly terminated on December 1, 2019; (3) MNG has no rights under the Combined Agreement and thus cannot maintain its claims for breach of contract and fraudulent inducement; and (4) Defendants claims for fraudulent inducement and punitive damages should fail because there is no evidence of fraud. The Court will consider each issue in turn.

### A. Validity and Enforceability of the Combined Agreement

Plaintiffs first contend that the Combined Agreement is invalid and unenforceable, and they seek summary judgment to that effect. (DE 15 at 8.) Their two primary arguments are that the Combined Agreement runs into perpetuity, which they describe as contrary to Kentucky law and public policy, and that the Combined Agreement lacks complete and definite terms. Defendants counter that the Combined Agreement is not an agreement in perpetuity. Further, Defendants say that the Combined Agreement contains all essential terms and the fact that the parties may afford some terms different meanings does not render the Agreement invalid or unenforceable. (DE 18 at 12–13.)

4

The parties agree that the interpretation of a contract is a question of law for the Court to decide. *See, e.g., C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 342 (W.D. Ky. 2012) (citing *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 875 (Ky. 2006)). The parties also agree that the "contract" at issue is the Combined Agreement, consisting of the Sales Agreement and the Addendum.

### 1. Perpetuity

Plaintiffs first argue that the Combined Agreement runs into perpetuity because the Sales Agreement describes its term as "from April 9 2018 [sic] and continues as long as Ecofibre/Ananda Hemp sells to Teterboro/Chief introduced customers . . . ." (DE 18-2.) Plaintiffs cite Kentucky caselaw stating that Kentucky law does not favor contacts running into perpetuity. *Elec. & Water Plant Bd. of City of Frankfort, Kentucky v. S. Cent. Bell Tel. Co.*, 805 S.W.2d 141, 143 (Ky. Ct. App. 1990). In that case, the court found that the appropriate remedy for a contract running into perpetuity is to allow a party to terminate the contract with reasonable notice. *Id.* Plaintiffs do not point to any caselaw, nor is the Court able to locate any, in which a contract running into perpetuity is considered invalid and unenforceable. Thus, the Court does not need to determine whether the contract runs into perpetuity.

### 2. Complete and Definite Terms

Plaintiffs next argue that the Sales Agreement is invalid and unenforceable because it lacks complete and definite terms. Plaintiffs specifically point to the lack of a termination clause, the lack of definitions for key terms, and ambiguity about who the parties were.

To be enforceable, a contract "must contain definite and certain terms setting forth promises of performance to be rendered by each party." *C.A.F. & Assocs., LLC*, 913 F. Supp. 2d at 343 (quoting *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997)). This does not require every possible term to be defined, but the contract "must set forth the 'essential

terms' of the deal." *Id.* (quoting *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 790 (W.D. Ky. 2001)). Material terms are those that define the agreement particulars and performance parameters. *First Tech. Capital, Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 985 (E.D. Ky. 2014). What specific terms are "material" may vary by contract, but common examples include quantity, price, fees, duration, and payment terms. *See MidAmerican Dist., Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 675 (E.D. Ky. 2011); *see also MidAmerican Dist., Inc. v. Clarification Tech., Inc.*, 485 Fed. App'x 779, 780 (6th Cir. 2012).

Plaintiffs first point to the lack of a termination clause. However, the Sixth Circuit has not considered the lack of a termination clause to be fatal. *See Shane v. Bunzl Dist. USA, Inc.*, 200 Fed. App'x 397, 402 (6th Cir. 2006) ("The district court correctly concluded that, because it lacked any term about its duration, the [contract] is terminable at will by either party under Kentucky law."). Thus, the contract cannot be invalid and unenforceable on that basis.

Next, Plaintiffs note that "introduce," "products," "Teterboro/Chief," and "Ecofibre/Ananda Hemp" are not defined when the Sales Agreement states that "Teterboro/Chief will introduce Ecofibre/Ananda Hemp to consumers . . . for the wholesale and retail distribution and sale of Ecofibre/Ananda Hemp products worldwide." The cases cited by Plaintiffs involve cases in which contracts are found unenforceable because material terms were omitted or left open. *See Frankfort Med. Invs., LLC v. Thomas By and Through Thomas*, 577 S.W.3d 484, 488 (Ky. Ct. App. 2019); *Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 364 (Ky. Ct. App. 2007); *First Tech. Cap., Inc.*, 53 F. Supp. 3d at 984. That does not appear to be the case here. The Sales Agreement contained the essential terms of the deal, and the parties operated under those terms for a

year before signing the Addendum, in which the parties apparently did not find it necessary to clarify any of the now "ambiguous" terms. Plaintiffs do not point to any caselaw, nor is the Court able to locate any, in which a contract containing the essential terms was invalidated due to supposedly ambiguous terms after the parties operated under the contract for over a year. Thus, the Court cannot find the contract invalid and unenforceable on that basis.

Based on the foregoing findings, the Court must deny summary judgment declaring the contract invalid and unenforceable.

**B. The Termination of the Combined Agreement**

In the alternative, Plaintiffs seek summary judgment declaring that they properly terminated the Combined Agreement effective December 1, 2019 because it covered no definite period of time and was thus terminable at will. (DE 15 at 16.) Defendants disagree, arguing that the Combined Agreement did have a definite term, albeit one that was condition-based (i.e. ". . . as long as Ecofibre/Ananda Hemp sells to Teterboro/Chief introduced customers . . .") rather than based on a specific date. Defendants also assert that Plaintiffs' termination of the Agreement was in bad faith and an attempt to avoid its obligation to pay commissions to Defendants. (DE 18 at 15–16.)

Kentucky law generally considers contracts without a termination date to be terminable at will. *MidAmerican Dist., Inc.*, 807 F. Supp. 2d at 677 (citing *Elec. & Water Plant Bd. of Frankfort*, 805 S.W.2d at 143 and *Brownsboro Road Restaurant, Inc. v. Jerrico, Inc.*, 674 S.W.2d 40, 41 (Ky. Ct. App. 1984)). This "terminable at will" rule is moderated by a requirement that the terminating party provide reasonable notice of termination, meaning sufficient time to allow the other party to make alternative arrangements and minimize losses. *Id.* (citing *Pharo Distrib. Co. v. Stahl*, 782 S.W.2d 635, 638 (Ky. Ct. App. 1989)).

7

Thus, the first question for the Court is whether the condition-based term in the Sales Agreement counts as a termination date. Here, the Court is guided by *Shane v. Bunzl Dist. USA, Inc.*, 200 Fed. App'x 397 (6th Cir. 2006), which also deals with an agreement for commission payments based on introductions leading to sales. In *Shane*, the Sixth Circuit considered an agreement to lack a term about its duration—and thus be terminable at will— when the agreement purported to govern the parties' arrangement "going forward." *Id.* at 399–402. In other words, the agreement would apply for as long as the parties continue to conduct business. Here, the Sales Agreement purported to govern the parties' arrangement "as long as Ecofibre/Ananda Hemp sells to Teterboro/Chief introduced customers . . ." While Defendants argue that this provides a definite term for the contract, the Court considers the language substantially similar to the language in *Shane* purporting to govern the parties' arrangement for as long as they conduct business. Thus, the Court finds that the Sales Agreement lacked a definite term of duration and was terminable by either party at will.

Next, the Court will consider whether Plaintiffs provided reasonable notice of termination to Defendants. Whether reasonable notice was provided is a question of fact "unless only one legitimate inference can be drawn from the facts proven, in which case the question is one of law for the court." *MidAmerican Distribution, Inc. v. Clarification Technology, Inc.*, 807 F. Supp. 2d 646, 678 (E.D. Ky. 2011) (citing *Pharo Distrib. Co.*, 782 S.W.2d at 638). To survive summary judgment, the non-moving party must present more than a mere scintilla of evidence that the notice period was unreasonable. *Id.* (citing *W. Ky. Coca-Cola Bottling Co., Inc. v. Red Bull N. Am., Inc.*, No. 1:08-CV-56-R, 2010 WL 65029, at *6 (W.D. Ky. Jan. 5, 2010)). Defendants do not provide any evidence that Plaintiffs' notice period of approximately six months was unreasonable. Additionally, other courts in this

8

Circuit have found shorter periods reasonable. *Id.* Accordingly, the Court finds that Plaintiffs provided reasonable notice of termination.

Finally, Defendants argue that Plaintiffs' termination was improper because it was in bad faith, alleging that it was an attempt to avoid an obligation to pay commissions to Defendants. Defendants cite a case about federal procurement law for the proposition that a party cannot terminate a contract in bad faith to gain a better bargain elsewhere. *See Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 583 (Ky. 2003). Kentucky law recognizes an implied covenant of good faith and fair dealing in contracts that imposes on the parties a duty to do everything necessary to carry out the contract. *See de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 823 (Ky. Ct. App. 2007) (quoting *Farmers Bank and Trust Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005)). However, an implied covenant of good faith "does not prevent a party from exercising its contractual rights." *Buridi v. Branch Banking and Trust Co.*, 654 Fed. App'x 802, 807 (6th Cir. 2016) (citing *de Jong*, 254 S.W.3d at 824). Because, as established above, the Combined Agreement was terminable by either party at will, the implied covenant of good faith could not prevent Plaintiffs from exercising their right to terminate the contract.

Based on the foregoing findings, the Court must grant summary judgment declaring that Plaintiffs properly terminated the Combined Agreement effective December 1, 2019.[3]

## C. MNG's Rights Under the Combined Agreement

Plaintiffs additionally seek summary judgment declaring that MNG has no rights under the Combined Agreement because it was not a party to the agreement.  (DE 15 at 18–19.)  If MNG was not a party to the Combined Agreement, it would be fatal to MNG's fraudulent inducement counterclaim and to MNG's breach of contract counterclaim unless

---

[3] This determination does not preclude Defendants from making arguments involving the implied covenant of good faith and fair dealing as it relates to other issues.

Defendants could demonstrate that MNG was an intended third-party beneficiary of the contract. *See Bariteau v. PNC Fin. Servs. Grp., Inc.*, 285 F. App'x 218, 220 (6th Cir. 2008) (citing *King v. Nat'l Indus., Inc.*, 512 F.2d 29, 32 (6th Cir. 1975)); *see also Prime Finish, LLC v. Cameo LLC*, 487 Fed. App'x 956, 959 (6th Cir. 2012) ("[A] contract cannot be enforced by a person who is not a party to it, or in privity with it, except … under certain circumstances, [such as] by a third-party beneficiary.") (quoting *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004)). Plaintiffs argue that MNG could not be a party or an intended third-party beneficiary of the contract because MNG had not yet been formed when the Sales Agreement was executed.  (DE 15 at 18.)

Defendants do not dedicate a section of their Argument to rebutting this claim, but elsewhere in their Response, Defendants note that MNG is a business unit of Teterboro/Chief and the three entity names were used synonymously.  (DE 18 at 3.)  Defendants also point to the deposition of Chuck Schneider, Chief Revenue Officer of Ecofibre and signatory to the Addendum on behalf of Ecofibre/Ananda Hemp, who answered in the affirmative when asked if he understood Teterboro/Chief to also go by the name "Mr. Nice Guy."  (DE 15-3 at 7, 24:6– 9.)  Defendants further cite the deposition of Eric Wang, CEO of Ecofibre and signatory to the Sales Agreement on behalf of Ecofibre/Ananda Hemp, for the proposition that Teterboro/Chief and MNG are synonymous.  (DE 18 at 3.)  However, Mr. Wang said that he did not understand Teterboro/Chief to also go by the name "Mr. Nice Guy" at the time of signing.  (DE 15-5 at 25, 24:15–17.)  Finally, Defendants note that Plaintiffs wired funds to "MNG" in performing their commission payment obligations under the Combined Agreement. (DE 18 at 14.)

MNG is not mentioned in either the Sales Agreement or the Addendum, so it might only have rights under the contract if it was a third-party beneficiary or if it was somehow assigned rights under the contract. Under Kentucky law, a third party need not be mentioned

in a contract to be a third-party beneficiary. *Prime Finish, LLC*, 487 Fed. App'x at 960. For a third-party beneficiary to obtain standing as an *intended* beneficiary, there must be consideration for the agreement flowing to the promisor and the promisee must intend to extract a promise directly benefitting the third party. *Id.* at 961 (citing *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 309 (Ky. 1984)). In other words, the contract must have been made for the actual and direct benefit of the third party. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. App. 1985). However, when a third party merely incidentally benefits from a contract, they do not obtain a right to sue for a contract's breach. *Prime Finish, LLC*, 487 Fed. App'x at 961. When a potential beneficiary was not in existence at the time a contract was formed—as is the case here—the Court of Appeals of Kentucky has declined to recognize that party as an intended third-party beneficiary, preferring to consider the party an incidental beneficiary at most. *Long v. Reiss*, 160 S.W.2d 668, 674 (Ky. Ct. App. 1942).

At this stage of the proceedings, the non-moving party must make an affirmative showing of a genuine dispute of fact in order to defeat the motion. *Alexander*, 576 F.3d at 558. Plaintiffs have argued that MNG has no rights under the contract because it did not exist at the time the Sales Agreement was signed. Kentucky law appears to disfavor assigning intended third-party beneficiary status to entities that did not exist at the time of contract formation. *See Long*, 160 S.W.2d at 674. Thus, even if Plaintiffs wired funds to MNG to satisfy contract obligations after MNG was formed, Kentucky law would appear to consider MNG an incidental beneficiary of the contract. Defendants have not offered any caselaw for the proposition that a third party may acquire intended beneficiary status after contract formation, nor have they offered any evidence that MNG was otherwise assigned rights under the contract. Because Defendants have not made an affirmative showing of a genuine dispute

of fact, the Court finds that MNG does not have rights under the contract and thus cannot sue for breach of contract or fraudulent inducement.[4]

Based on the foregoing, the Court must grant summary judgment as to the issue of MNG's rights under the Combined Agreement.

**D. Teterboro/Chief's Fraudulent Inducement Counterclaim**

Plaintiffs finally seek summary judgment as to Teterboro/Chief's counterclaim for fraudulent inducement.[5] In Kentucky, a plaintiff's claim for fraudulent inducement must show by clear and convincing evidence: (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false or made the representation recklessly; (4) the defendant made the representation with the intention that it be acted on; (5) the plaintiff acted upon the representation in reliance thereon; and (6) this caused injury to the plaintiff. *Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 523 (W.D. Ky. 2016) (citing *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 613 (Ky. Ct. App. 2011)). Plaintiffs argue that "there is no proof of fraud" concerning the Combined Agreement and that Defendants admit they signed the Addendum willingly, not under duress, and were not defrauded.  (DE 15 at 19.)

Defendants allege that Plaintiffs knew the "non-circumvent" clause in the Combined Agreement was a false representation or made with reckless disregard for the truth to induce Defendants to sign the contract, that the clause was material and Defendants would not have signed the contract without it, and that Defendants suffered damages as a result due to lost

---

[4] While MNG's counterclaims fail because MNG does not have rights under the contract, Teterboro/Chief's counterclaims are not affected.
[5] Plaintiffs also include a section in their Argument seeking summary judgment as to Defendants' claim for punitive damages. While Defendants include "Punitive Damages" as a "Count" among their counterclaims, the Court construes this as a prayer for relief related to Defendants' claim for fraudulent inducement. A claim for punitive damages is not a separate cause of action but a possible remedy, *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378–79 (W.D. Ky. 2012), which is authorized under Kentucky law by Kentucky Revised Statutes §§ 411.184 & 411.186 if a defendant acted toward a plaintiff with fraud.

commissions.  (DE 18 at 18–19.)  Defendants specifically point to the deposition of Mr. Schneider, signatory to the Addendum on behalf of Ecofibre/Ananda Hemp, who seemed to believe that the "non-circumvent" clause had no meaning.  (DE 15-3 at 10, 33:17–22) ("Q. Okay. So based on your testimony, is it your opinion that this non-circumvention provision doesn't have any meaning? A. You know, I -- as it pertains to the ability of Ananda to work with other -- other entities, yeah.")

While Defendants have not conclusively proven their claim for fraudulent inducement, there appear to be genuine issues of material fact related to every element of Defendants' fraudulent inducement counterclaim as it relates to the "non-circumvent" clause.

Based on the foregoing, the Court must deny summary judgment as to Teterboro/Chief's fraudulent inducement counterclaim.

## IV. CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED** Plaintiffs' Motion for Summary Judgment (DE 15) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Plaintiffs' motion for summary judgment that the Combined Agreement is invalid and unenforceable is **DENIED**;

(2) Plaintiffs' motion for summary judgment that they properly terminated the Sales Agreement effective December 1, 2019 is **GRANTED**;

(3) Plaintiffs' motion for summary judgment that MNG has no rights under the Combined Agreement is **GRANTED**; and

(4) Plaintiffs' motion for summary judgment on Defendants' counterclaim for fraudulent inducement is **DENIED**.

This 27th day of October, 2021.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY