UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **KENTUCKY INDUSTRIAL HEMP, LLC, and ANANDA HEMP, INC.,** | CIVIL ACTION NO. 5:19-496-KKC |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| **TETERBORO PARTNERS, LLC, CHIEF VENTURES, LLC, and MR. NICE GUY, INC.,** | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion filed by Teterboro Partners, LLC, Chief Ventures, LLC, and Mr. Nice Guy, Inc. (collectively "Teterboro") to alter or amend (DE 82) the Court's August 12, 2022 Judgment ("Judgment"). (DE 81.) For the following reasons, Teterboro's motion is denied.

**I.    Facts**

The facts of this case have been detailed in the Court's prior opinions in this matter. As such, the Court focuses on the facts most salient to the instant motion.

This case involves Kentucky Industrial Hemp, LLC and Ananda Hemp, Inc. (collectively "Ananda") and the Sales Agreement (DE 1-1 at 6) that Ananda entered into with Teterboro on April 9, 2018. Under the Sales Agreement, Ananda was required to pay commissions to Teterboro if Ananda made sales to customers that Teterboro introduced to Ananda. The two parties signed an Addendum (DE 1-1 at 7) to supplement the agreement a little over a year after they executed the Sales Agreement. Almost six weeks after the

1

execution of the Addendum, however, Ananda sent Teterboro notice of its intent to terminate the Combined Agreement effective six months later on December 1, 2019. After disagreement between the parties, Ananda filed an action in Harrison Circuit Court on November 12, 2019, and Teterboro promptly removed to federal court.

Once an initial round of summary judgment was decided in the case, both parties filed motions in limine that raised significant issues inappropriate for timely resolution leading up to trial. After a scheduling conflict forced it to reschedule the pending trial (DE 67), the Court permitted the parties to submit additional motions for summary judgment to address some of the legal issues raised in the parties' motions in limine. (DE 68.) Ananda submitted three motions for summary judgment: one addressing claims for damages related to future sales of Ananda products (DE 69); one addressing claims for commissions on sales to CVS Health (DE 70); and one addressing Teterboro's remaining claims, including those related to breach of contract, tortious interference, fraud, and bad faith (DE 71-2). The Court granted Ananda summary judgment on all issues, except whether Teterboro was owed commissions on any potential future sales. (DE 80 at 19.)

Now, Teterboro moves to alter or amend the Judgment to vacate its grant of summary judgment in favor of Ananda. Teterboro argues that the Court made its ruling "based on an unwritten performance obligation, which it read into the Agreement in reliance on extrinsic evidence without any finding of ambiguity, as required under Kentucky law." (DE 82 at 14.) This particular "unwritten performance obligation" arose from the interpretation of the word "introduce" in the Sales Agreement—i.e., whether Teterboro's introductions had to directly lead to sales to earn commissions or whether they simply had to introduce Ananda to potential customers. Teterboro, surprisingly, now argues that the latter applied to the Sales Agreement and the Court was wrong to look to the "parties' supposed intents." (DE 82 at 1.)

This ruling is the subject of Plaintiffs' motion to alter or amend judgment.

**II.     Analysis**

Pursuant to Federal Rule of Civil Procedure 59(e), a party must file a motion to reconsider judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The standard for a motion to reconsider under Rule 59(e) is "necessarily high." *Hewitt v. W. & S. Fin. Grp. Flexibly Benefits Plan*, CIVIL ACTION NO. 16-120-HRW, 2017 WL 2927472, at *1 (E.D. Ky. July 7, 2017). The moving party may not use a Rule 59(e) motion as a tool to "re-litigate issues the Court previously considered." *Id.* at *1. A court may only grant a Rule 59(e) motion if the moving party sets forth (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). Further, "Rule 59(e) motions cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. U.S.*, 533 F.3d 472, 475 (6th Cir. 2008). It "allows for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Id.* (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)) (explaining that a district court "may well deny the Rule 59(e) motion on that ground.").

Teterboro files its motion based on a clear error of law. (DE 82 at 5.) It claims that the Court erroneously found that Teterboro's introductions had to **directly lead to sales** in order to earn commissions under the Sales Agreement. In making this claim, Teterboro argues four potential conclusions: (1) the Sales Agreement was unambiguous and the Court erroneously relied on extrinsic evidence to vary its terms; (2) the performance obligation in the Sales Agreement was ambiguous and interpretation should have been left to the jury; (3) the Court's interpretation of the Sales Agreement was unreasonable; or (4) the Court improperly ignored and weighed evidence when granting summary judgment to Ananda. The

3

issue is, however, that Teterboro never raised this argument regarding the "directly leads to sales" interpretation of the performance obligation before filing its current motion to alter or amend judgment. In fact, Teterboro **agreed** with the Court's interpretation of the performance obligation prior to the Judgment.

Teterboro's motion to alter or amend the Court's judgment does not grant them an opportunity to reargue their case with a new theory. In *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, the moving party forwarded only one argument in its motion to alter or amend judgment under Rule 59(e)—that the district court failed to recognize that an adopted statute transferred the exclusive right to operate electronic games of chance from the tribe to the Michigan Gaming Control Board and City of Detroit. 146 F.3d 367, 374 (6th Cir. 1998). The Sixth Circuit found that this argument was "raised [] tardily." *Id.* The moving party acknowledged that it had not made the argument prior to filing its Rule 59(e) motion, but argued that it was not raised because it "never thought the district court would determine otherwise." *Id.* The Sixth Circuit was not persuaded, and it reemphasized that, if the moving party wanted that legal argument considered, it must have raised it prior to its Rule 59(e) motion. *Id.* Whether or not the moving party thought the district court would decide an issue a certain way was irrelevant to the mechanics of Rule 59(e). Accordingly, the district court's dismissal of the motion was affirmed.

The Court finds *Engler* dispositive in this matter. Here, Teterboro takes issue with how the Court interpreted its performance obligations under the Sales Agreement. Instead of introductions needing to directly lead to sales for commissions to accrue, Teterboro argues that such an interpretation has it "do more than what the contract expressly provided in order to earn its commissions." (DE 82 at 1.) Teterboro's new position is that the plain terms of the Sales Agreement are unambiguous: that "if Teterboro introduced Ananda to a potential

4

customer that Ananda subsequently sold to, Teterboro was entitled to a commission." *Id.* at 5. Teterboro takes issue with the "directly led to sales" interpretation of the Sales Agreement and argues that the Court improperly looked to extrinsic evidence to come to that particular interpretation. *Id.* at 6. Not only did Teterboro fail to raise this legal argument before filing its Rule 59(e) motion, it expressly agreed with the "directly led to sales" interpretation multiple times.

In preparation for trial, the Court conducted a pretrial conference on March 17, 2022 to better understand the issues to be raised at trial. The Court asked the parties to clarify their interpretations of the performance obligations for earning commissions. The parties were in express agreement. In order to earn commissions, Teterboro had to introduce Ananda to potential customers that directly led to sales. The issue in the case was not legal but, according to Teterboro, factual and for the jury's consideration whether it directly caused the sale:

> THE COURT: All right. This is helpful. Ms. Mattingly, and so your position is that your clients' introductions was the direct result – or that the sales directly resulted from this introduction?
>
> MS. MATTINGLY:[1] From that relationship that formed based on the introduction, yes. And, Your Honor, there are facts, as he just said, there are facts. **It's a factual issue for the jury here who directly caused the sale. We don't have a fundamental disagreement as to what introduction means or what performance was.**

(DE 84 at 27 (emphasis added).)

When faced with this apparent agreement of the parties regarding the performance obligations under the Sales Agreement, the Court clarified the matter with Teterboro's counsel:

> THE COURT: Wait. I have a question. **If your client can only introduce people and that introduction does not directly lead to sales, your client has no right to recover commissions?**

---

[1] Counsel for Teterboro.

5

>MS. MATTINGLY: **That is correct.** Our argument is that **there is a factual dispute over whether our introduction directly led to the sales here.**

*Id.* at 31 (emphasis added).

And the Court clarified the matter even further:

>THE COURT: So you agree on what is required for performance, that **it must be an introduction that leads to a sale, and there's no dispute about that; is that correct?**
>
>MR. HUNTER:[2] That directly leads to a sale.
>
>THE COURT: I understand, yes. And you agree with that as well, Ms. Mattingly?
>
>MS. MATTINGLY: **No dispute about that; we agree.**
>
>THE COURT: Okay. Because as I was reading this, I didn't quite understand it. It appeared more to me that the defendant was claiming . . . that no sale had to be related just because it had completed performance by making an introduction.
>
>MS. MATTINGLY: **No, Your Honor, that's not our position at all.**

*Id.* at 32 (emphasis added).

Teterboro's current motion is inconsistent with its representations to the Court at the pretrial conference. *Id.* The Court has investigated the record and found only instances where Teterboro agreed with Ananda that introductions had to directly lead to sales to earn commissions. Teterboro's own vice president, Louis Egan, agreed that sales had to directly result from his introductions in order for commissions to be owed to Teterboro. (DE 15-1 at 32.) If Teterboro disputed this interpretation of the contract, the time to raise that argument is long past.

---

[2] Counsel for Ananda.

6

The appropriate place where Teterboro could have raised this new legal argument—one that was contrary to their previous representations to the Court—was in its Response to Ananda's second summary judgment motion. (DE 77.) Yet, Ananda argues only that the Sales Agreement was a customer procurement contract and not a sales procurement contract. *Id.* at 15. This argument only addresses the matter of whether Teterboro had contractual obligations to make sales on behalf of another. *Id.* Teterboro argues that it did not, which made the "procuring cause" doctrine inapplicable to the Sales Agreement. *Id.* Nowhere in its Response, however, does Teterboro argue that its introductions did not have to directly lead to sales to earn commissions. Nowhere does Teterboro retract its multiple statements about what the interpretation of the performance obligations under the Sales Agreement was. Because Teterboro failed to raise this argument before the Court issued its Judgment and Rule 59(e) does not give a party an opportunity to raise new arguments, the Court must deny Teterboro's motion to amend or alter its Judgment.

### III.   Conclusion

The Court hereby orders as follows:

1.   Plaintiffs' motion to alter or amend (DE 82) the Court's August 12, 2022 Judgment (DE 81) is DENIED; and

2.   The case SHALL remain DISMISSED and STRICKEN from the docket.

This 13th day of September, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY